# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3577

_____

United States of America

*Plaintiff - Appellee*

v.

Lamar Outlaw

*Defendant - Appellant*

_____

Appeal from the United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: April 9, 2013
Filed: July 29, 2013

_____

Before LOKEN and GRUENDER, Circuit Judges, and PHILLIPS,[1] District Judge.

_____

PHILLIPS, District Judge.

Lamar Outlaw pleaded guilty to being a felon in possession of a firearm. At sentencing, the Government moved for an upward departure pursuant to United States

_____

[1]The Honorable Beth Phillips, United States District Judge for the Western District of Missouri, sitting by designation.

Sentencing Guideline § 4A1.3(a). The district court[2] granted the motion and increased Outlaw's total offense level by two levels. The district court then sentenced him to 293 months' imprisonment.

Outlaw now appeals. He contends the district court erred in granting the upward departure. He also contends the district court erred in failing to state in writing the reasons for this departure. We affirm.

I.

A grand jury charged Outlaw with one count of possessing and aiding and abetting the possession of a firearm after having been convicted of a felony. 18 U.S.C. §§ 2, 922(g)(1), and 924(a)(2). Outlaw pleaded guilty.

The district court held a sentencing hearing. After hearing evidence and argument, the court made initial findings under the Sentencing Guidelines. First, the court determined Outlaw's total offense level was 31. Second, the court assessed 23 points for Outlaw's prior criminal history, resulting in a criminal history category of VI. Based on these findings, Outlaw's initial guideline range was 188-235 months.

The district court then took up the Government's motion for an upward departure pursuant to U.S.S.G. § 4A1.3(a). The Government argued that category VI did not adequately represent the extent of Outlaw's criminal history. This history spanned a ten-year period between 1993 and 2003, and it included a total of 20 criminal offenses. Thirteen of those offenses related to an assault. More specifically, ten offenses arose from an assault upon a female, and an additional two offenses arose from an assault upon a police officer. Only three of Outlaw's offenses – interference

_____

[2]The Honorable Mark W. Bennett, United States District Judge for the Northern District of Iowa.

with official acts, voluntary absence from a community correctional facility, and disorderly conduct – were assessed no criminal history points.

After reviewing Outlaw's criminal history, the district court stated, "I don't think I've ever seen this many assault convictions[.]" The court also remarked that Outlaw's criminal history contained an "incredible history of violence" and was "one of the worst criminal histories I've ever seen in terms of assault." Ultimately, the court concluded that based on Outlaw's "23 criminal history points, I just feel I absolutely have to increase this sentence." The court emphasized that this increase was based on a need to protect the public.

The district court granted the Government's motion and increased Outlaw's offense level by two levels. As a result, Outlaw's total offense level was 33, his criminal history category was VI, and his sentencing range was 235-293 months. The court sentenced Outlaw to 293 months' imprisonment. In an accompanying written order, the court noted it had departed upward two levels for under-represented criminal history, but it did not elaborate further.

II.

Outlaw now appeals his sentence. "We review the court's decision to depart upward for an abuse of discretion." *United States v. Johnson*, 648 F.3d 940, 942 (8th Cir. 2011) (citation omitted).

Outlaw raises two issues. First, Outlaw contends the district court erred in granting the upward departure under U.S.S.G. § 4A1.3(a). Specifically, Outlaw argues the court erred because: (1) his prior assault offenses are dissimilar from his instant firearms offense; (2) his 23-point criminal history score adequately accounts for his criminal history, because only a few of his prior offenses were assigned no

points; and (3) he was not on probation or parole when he committed the instant offense.

Section 4A1.3 permits a district court to grant an upward departure if "the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes[.]" U.S.S.G. § 4A1.3(a)(1). Section 4A1.3 expressly sets forth five factors the court may consider when deciding whether to depart. *Id*. § 4A1.3(a)(2). However, the court is not limited to considering only these factors. *United States v. Porter*, 439 F.3d 845, 849-50 (8th Cir. 2006). Instead, the court may consider a wide variety of other information. *Id*. For instance, the court may consider "the substantial likelihood a defendant will commit future crimes or his capacity for future violence." *Id*. at 849. The court may also consider a defendant's prior serious criminal offenses, even if those offenses are different in kind from the instant offense. *Id*.; *Johnson*, 648 F.3d at 943. To depart from the highest possible criminal history category – category VI – the court incrementally increases the defendant's offense level until reaching an appropriate sentencing range. U.S.S.G. § 4A1.3(a)(4)(B); *see Johnson*, 648 F.3d at 943-44.

In light of this law, Outlaw's arguments against the upward departure fail. As an initial matter, the district court found that a category VI criminal history under-represented Outlaw's criminal history. Category VI requires a minimum of 13 criminal history points. Outlaw's 23 points far exceeded this minimum.

The district court also properly considered Outlaw's long history of committing assaults. Of his 20 criminal offenses, 13 related to an assault. Outlaw assaulted a police officer on two occasions. He assaulted his current or former girlfriend on three occasions. And he assaulted a 13-year-old girl on a separate occasion. These crimes show a pattern of violent conduct and recidivism, and they suggest Outlaw would commit additional violent crimes. The court could consider these offenses, even

though they are dissimilar from his instant firearms offense. Likewise, the court could also consider Outlaw's three prior offenses that were assigned no criminal history points. The Sentencing Guidelines expressly permit a court to consider an un-scored offense. U.S.S.G. § 4A1.3(a)(2)(A). In addition, one of Outlaw's un-scored offenses – for disorderly conduct – arose from a violent assault. In light of this criminal history, the fact Outlaw was not on either probation or parole is of no consequence. The district court did not err in granting a two-level upward departure under § 4A1.3(a). *See United States v. King*, 627 F.3d 321, 322 (8th Cir. 2010) (affirming one-level upward departure under § 4A1.3(a), where defendant's 34-point criminal history was based on a "longstanding pattern of violence"); *United States v. Jones*, 596 F.3d 881, 883 (8th Cir. 2010) (affirming two-level upward departure under § 4A1.3(a), where defendant's 19-point criminal history was based on an "extensive" criminal history).

In his second issue, Outlaw challenges the district court's failure to memorialize in writing the reasons for granting the upward departure. Although Outlaw concedes the court discussed these reasons in open court, he argues the court erred by failing to also state them in writing.

"When a district court departs outside the recommended range of the guidelines, it must state in open court and in the written order of judgment and commitment the reasons for that particular sentence." *United States v. Paz*, 411 F.3d 906, 910-11 (8th Cir. 2005) (citing 18 U.S.C. § 3553(c)(2)); *see also* U.S.S.G. § 4A1.3(c)(1) (stating that when a court departs upward, it shall specify in writing why the defendant's criminal history category under-represents the seriousness of his criminal history or the likelihood he will commit additional crimes). The purpose of requiring written reasons is to inform the parties, facilitate appellate review, and assist in administrative data collection. *Paz*, 411 F.3d at 911. However, a failure to provide written reasons does not automatically require reversal. *Id*. Instead, any

prejudice from this failure is "nullified when the district court stated with great specificity in open court the reasons for its decision to depart upward." *Id*.

Here, the district court indicated in the written statement of reasons that it departed upward two levels for under-representation of criminal history, but it did not elaborate further. However, the court did so only after holding a comprehensive sentencing hearing, in which it explained at length the reasons for the departure. Therefore, even if the court's written explanation is somewhat lacking, its thorough explanation during the sentencing hearing negated any prejudice and fulfilled the purposes of the written-reasons requirement. The district court did not commit reversible error.

III.

The district court is affirmed.

_____